**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| Derrick Lee Billups, | ) | CV-06-1014-DCB   P |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Lomeli, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Derrick Lee Billups, while confined at Sierra Conservation Center (SCC) on Tuolumne Yard at Jamestown, filed this *pro se* civil rights action pursuant to 42 U.S.C. §1983. He alleged that various state employee correctional officers violated his Eighth Amendment rights by failing to protect him from an attack by his cellmate in the general living area.  Plaintiff filed a Motion for Summary Judgment against the only remaining Defendant. (Doc. 50, 51.) Defendant filed a Cross-Motion for Summary Judgment (Doc. 54.)  The motions are ready for ruling.

The Court will deny Plaintiff's motion, grant Defendant's motion, and terminate the case.

**FACTUAL BACKGROUND**

Plaintiff Derrick Lee Billups is a California State Prisoner. Plaintiff filed his First Amended Complaint on January 3, 2008 alleging constitutional claims under 42 U.S.C. § 1983 for violations of his

Eighth Amendment rights. The Court screened the First Amended Complaint and determined that Plaintiff had only made a cognizable claim against Defendant Lomeli, a Correctional Sergeant at SCC.

Plaintiff was incarcerated at the Sierra Conservation Center at the time the events occurred. On June 12, 2005, Plaintiff informed Correctional Officer Meade that his cellmate was threatening him. Officer Meade told the Plaintiff that he could not authorize an immediate cell move, but contacted Sergeant Lomeli and sent Plaintiff and his cellmate to meet with him. Defendant Lomeli met with each inmate separately and then brought them together to discuss their concerns. Plaintiff told Defendant Lomeli that he felt his health and safety were threatened by being housed in the same cell, with inmate Brownlee. Defendant Lomeli stated that he did not believe that inmate Brownlee posed a threat to Plaintiff's safety, but if Plaintiff continued to request a bed move that he would be placed in administrative segregation. Defendant Lomeli also informed Plaintiff that he could refuse to return to his cell but that he would be placed in administrative segregation. Instead of refusing to return to his cell and being placed in administrative segregation, Plaintiff returned to his housing unit.

Upon returning to the housing unit, but before returning to his cell, inmate Brownlee attacked Plaintiff, causing Plaintiff injury.

**LEGAL STANDARD OF REVIEW**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

1  (1986).  Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.* at 250; *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Rule 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading."  Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968).  However, Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50.

**DISCUSSION**

**I.   DEFENDANT WAS NOT DELIBERATELY INDIFFERENT TO PLAINTIFF'S SAFETY CONCERNS**

   **A. Eighth Amendment Failure to Protect Standard.**

A prison official may be held liable for denying a prisoner humane conditions of confinement, under the rule that an official's deliberate indifference to a substantial risk of serious harm to a prisoner violates the cruel and unusual punishments clause of the Federal Constitution's Eighth Amendment, only if the official is subjectively aware that prisoners face such a risk—the official not only being aware of facts from which an inference of such a risk could be drawn, but also drawing that inference—and disregards that risk by failing to take reasonable measures to abate the risk; deliberate indifference is equivalent to reckless disregard and describes a state of mind more blameworthy than negligence, but is something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result; subjective recklessness, as defined in the criminal law, is the appropriate test for deliberate indifference; and the

4

failure of prison officials to alleviate a significant risk that they should have perceived, but did not, cannot be condemned as the infliction of punishment within the meaning of the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825 (1994).

*Farmer v. Brennan* involved an action by a prisoner under the cruel and unusual punishment clause of Eighth Amendment, where a prisoner was a transsexual who had been beaten and raped when he was moved to a different prison and placed in the general prison population rather than segregated, as he had been in prior prison, prison officials could not escape liability for deliberate indifference by showing that while they were aware of obvious, substantial risk to prisoner's safety, they did not know that the prisoner was especially likely to be assaulted by a specific inmate who eventually committed an assault; the question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to sufficiently substantial risk of serious damage to a prisoner's health, and it did not matter whether a risk came from single source or multiple ones. It remained open for prison officials to prove that they were unaware even of obvious risk to inmate health or safety, by showing that they did not know underlying facts indicating sufficiently substantial danger and that they were therefore unaware of danger, or that they knew underlying facts but believed, though unsoundly, that risk to which facts gave rise was insubstantial or nonexistent. Prison officials who actually knew of substantial risk to a prisoner's health or safety could be found free from liability if they responded reasonably to risk, even if harm ultimately was not averted; prison official's duty under the Eighth Amendment was to insure reasonable safety for prisoners, a standard that

incorporates due regard for prison officials' difficult task of keeping dangerous persons in safe custody under humane conditions. *Id.*

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Jones v. Marshall*, 459 F. Supp. 2d 1002 (E.D. Cal. 2006), yet not every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety. *Glenn v. Berndt*, 289 F. Supp. 2d 1120 (N.D. Cal. 2003).

Plaintiff must show more than negligence (for example if a prison guard should, but does not know of a risk) or even gross negligence. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990); *Daniels v. Williams*, 474 U.S. 327, 332 (1986). Mere inadvertence or error made in good faith does not support an Eighth Amendment claim. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

**B. Plaintiff's Eighth Amendment Rights Were Not Violated**

Defendant Lomeli appropriately responded to the Plaintiff's safety concerns. By Plaintiff's own admission, Lomeli provided him with the opportunity to move to administrative segregation.[1] While Plaintiff implies that Lomeli telling him that the only bed move he would get is to administrative segregation was a threat, this contention is irrelevant under the circumstances. The California Code of Regulations requires an immediate move to administrative segregation "when an inmate's presence in an institution's general inmate population presents an immediate threat to the safety of the inmate . . ." Cal. Code Regs, Tit. 15, § 3335(a) (2009). Even though Defendant does not admit that he

---

[1] "Administrative segregation" is a catch-all phrase for any form of non-punitive segregation. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Placement in administrative segregation is not indefinite and subject to post-placement periodic review. *Id.* at 477; *Sandin v. Conner*, 515 U.S. 472, 480 (1995). It is not punishment and not indefinite.

was directly made aware of safety concerns, the fact that a refuge was offered to Plaintiff and refused goes against Plaintiff's case. It is undisputed that Plaintiff could have refused to return to his cell, which would also cause him to be re-housed in administrative segregation—again giving Plaintiff the option to be removed from his cell. Defendant Lomeli is not liable for Plaintiff deciding to return to his cell rather than moving to administrative segregation.

Based on his own words, Plaintiff did not inform Defendant Lomeli that he could not be housed on the same yard as his cellmate, only that he could not be safely housed in the same cell as inmate Brownlee. Thus, even if Defendant Lomeli would have moved Plaintiff to another general population cell (rather than to administrative segregation), as Plaintiff contends should have occurred, the alleged threat to Plaintiff's safety would not have been eliminated because Plaintiff was injured in the dayroom (a general population area), not his cell. Based on Plaintiff's own recitation of the events, Defendant Lomeli did not violate Plaintiff's Eighth Amendment Rights.[2]

Plaintiff claims that Defendant Lomeli failed to protect him from his cellmate. Defendant Lomeli correctly argued, in his Motion for Summary Judgment, that Plaintiff's own statements demonstrate that Defendant Lomeli appropriately responded to the Plaintiff's safety concerns. That is, by Plaintiff's own admission, Lomeli provided him with the opportunity to move to administrative segregation. Plaintiff's

---

[2] Defendant objects to Plaintiff's Exhibit 15 on the grounds that it is irrelevant and contains hearsay. Fed. R. Evid. 401, 402 and 802. Inmate Smith's statements that: (1) he witnessed correctional officers, not specifically the Defendant, harassing Plaintiff beginning in 2003; (2) Brownlee was released form administrative segregation before the Plaintiff; and, (3) Correctional Officer Douglas made statements that things were going to happen if they did not keep quiet about the inmate Jacobo situation, are irrelevant to whether or not Defendant Lomeli knew of and consciously disregarded a serious risk of harm to Plaintiff on June 12, 2005. Those objections are sustained.

1  attempt to create a dispute by showing that Defendant Lomeli denies
2  offering him placement in administrative segregation is misdirected, as
3  Defendant's undisputed fact specifically stated that "Lomeli allegedly
4  responded that the only bed move Plaintiff would receive was to
5  administrative segregation." (PDepo at 19, 35.) Plaintiff cannot dispute
6  that he made this allegation in his complaint, nor can he create a
7  triable issue of fact by disputing his own deposition testimony. *See
8  Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991)
9  (confirming the general rule in the Ninth Circuit that a party cannot
10 create an issue of fact by an affidavit contradicting his prior
11 deposition testimony); *see also Radobenko v. Automated Equipment Corp.*,
12 520 F.2d 540, 543-44 (9th Cir. 1975) (rejecting as not "genuine" issues
13 of material fact created by plaintiff's recitals in a sworn affidavit
14 submitted in opposition to defendant's summary judgment motion which
15 contradicted plaintiff's own prior deposition testimony.) Defendant's
16 motion is supported by Plaintiff's own deposition testimony and his own
17 sworn statements in his Complaint. Plaintiff, additionally, failed to
18 offer any evidence to dispute that he could have refused to return to
19 his cell, which would also cause him to be re-housed in administrative
20 segregation, or to dispute the fact that he did not inform Defendant
21 Lomeli that he could not be housed on the same yard as his cellmate,
22 only that he could not be safely housed in the same cell as inmate
23 Brownlee. Plaintiff's own factual assertions negate the elements of
24 deliberate indifference.
25      The undisputed facts, based on Plaintiff's version of these facts,
26 establish that Defendant Lomeli appropriately responded to the safety
27 concerns brought to his attention by Plaintiff. It is undisputed that
28 Lomeli offered to move Plaintiff to administrative segregation, which

would have permitted Plaintiff to escape his perceived dangerous situation. (Lomeli Decl., Ex. A; Plaintiff's Undisputed Fact 4.)

The Court's conclusion is reached keeping in mind that protecting the safety of prisoners and staff involves difficult choices and evades easy solutions. *Bell v. Wolfish,* 441 U.S. 520, 547 (1979). Courts often lack competence to evaluate fully prison administrative decisions. *Id.* at 547-48. *See generally Hudson v. Palmer,* 468 U.S. 517 (1984). The Supreme Court has stated that deference to the decisions of prison officials also extends to "prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." *Id.* As such, the Court will not question whether or not the offer of administrative segregation was the only or best solution to Plaintiff's safety concerns under the circumstances of this action.

Placing inmates in segregation is a common and acceptable means of protecting them. *See Case v. Ahitow,* 301 F.3d 605, 607 (7th Cir.2002). Even with actual knowledge of the risk, the defendants' only duty was to act reasonably. *See Farmer,* 511 U.S. at 844; *Peate v. McCann,* 294 F.3d 879 (7th Cir.2002) (remanding for determination of whether prison guard acted reasonably in returning weapon to prisoner where he was aware of the risk of harm to another inmate from previous fight). The fact that a correctional officer might have made a bad choice because the threatened violence was ultimately not averted does not make for a constitutional violation. *See Farmer,* 511 U.S. at 844; *Babcock v. White,* 102 F.3d 267, 274 (7th Cir.1996) (finding no deprivation of liberty interest where inmate feared mafia members in the general population, chose to enter administrative detention for his own protection, and ultimately regretted his choice). In this instance, taking Plaintiff's

version of events as true, it was Plaintiff that made a bad choice not to take administrative segregation.

**II. DEFENDANT LOMELI IS ENTITLED TO QUALIFIED IMMUNITY.**

The doctrine of qualified immunity protects state officials from personal liability "unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted); *Pearson v Callahan*, __ U.S. ___, 129 S. Ct. 808, 813(2009) (holding that the Court may exercise its discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first).

Qualified immunity applies whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 129 S. Ct. at 815. This inquiry assesses the objective legal reasonableness of an action in light of the legal rules that were clearly established at the time it was taken. *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The standard allows "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law," and applies even when wrongful
conduct occurs. *Richardson v. McKnight*, 521 U.S. 399, 403 (1997); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (internal quotations omitted). The plaintiff bears the burden of establishing that the defendant violated a clearly established right. *Davis v. Scherer*, 468 U.S. 183, 187 (1984). To be clearly established, the right must be "clearly established in a particularized sense, such that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635,

640 (1987); *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). Constitutional requirements are not always clear-cut at the time that action is required by officials. Therefore, "regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

Because reasonableness is judged against the backdrop of the law at the time of the conduct at issue, *Brouseau v. Haugen*, 543 U.S. 194, 198 (2004), the reasonableness inquiry must be undertaken in the light of the specific context of the case and not as a general, broad proposition. *Saucier*, 533 U.S. at 202. The official is entitled to qualified immunity, unless the challenged conduct has been found unconstitutional under facts not distinguishable in a fair way from the facts presented in the case at hand. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). All available decisional law, including unpublished decisions and the law of other circuits and districts courts is considered when determining whether the law was clearly established. *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996); *Sorrels v. McKee*, 290 F.3d 965, 971 (9th Cir. 2002) (unpublished district court decisions may be considered).

Here, Defendant Lomeli is entitled to qualified immunity because no clearly established law would have placed a reasonable correctional officer on notice that offering to place an inmate in administrative segregation because of the inmate's safety concerns was unreasonable. To the contrary, the California Code of Regulations specifically mandates that inmates with safety concerns be placed in administrative segregation. Cal. Code Regs, Tit. 15, § 3335(a)(2009). It is thoroughly

11

inconsistent with the rationale underlying the doctrine of qualified immunity to hold individuals personally liable for conduct not previously clearly identified as unlawful. Because prison officials are not required to anticipate subsequent legal developments, they cannot fairly be said to "know" the law unless it is sufficiently unmistakable from authoritative sources. Thus, it is not sufficient to consider whether the logical extension of principles and decisions in previous decisions that provided notice. Rather, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson*, 483 U.S. at 640. Because Plaintiff cannot show that it was sufficiently clear to a reasonable official that Defendant's actions violated the constitution, Defendant Lomeli is entitled to qualified immunity.

Plaintiff argues that Defendant Lomeli is not entitled to qualified immunity because Defendant could have reasonably anticipated that his conduct would give rise to liability. Plaintiff again omits the fact that his own statements demonstrate that Defendant Lomeli offered him placement in administrative segregation. Defendant Lomeli is, thus, entitled to qualified immunity because no clearly established law would have placed a reasonable correctional officer on notice that offering to place an inmate in administrative segregation because of the inmate's safety concerns was unreasonable.

By the same token, the Court does not find any evidence that Defendant violated a clearly established constitutional right by not immediately and preemptively removing Plaintiff from the general prison population; it was not what Plaintiff requested yet it was the only relief that would have prevented the assault which occurred in the general population area. There are no facts nor does Plaintiff argue

analogous facts, circumstances or authority for the proposition that Defendant should have reasonably known under the circumstances that he was violating Plaintiff's constitutional rights by not immediately removing him from the general population with or without Plaintiff's consent. *See Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (the unlawfulness of a clearly established right must be apparent from existing authorities); *Saucier,* 533 U.S. at 202. All parties agree that this situation was always addressed as a "cellmate" issue, not a "general ongoing threat to safety by remaining in the general population" issue.

Just as the Defendant is not required to predict the future course of applicable constitutional law, he could not have been expected to predict Plaintiff's future assault based on the facts as they were presented to him by Plaintiff himself at the time. *See generally Borello v. Allison*, 446 F.3d 742 (7th Cir. 2006); *Faulkner v. Litscher*, 130 Fed.Appx. 812 (7th Cir. 2005). In sum, based on this record, Defendant is entitled to qualified immunity.

### III.  STANDARD FOR RESOLVING CROSS-MOTIONS FOR SUMMARY JUDGMENT

Cross-motions for summary judgment are examined under the Rule 56 standards. *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irr. Trust*, 410 F.3d 304, 309 (6th Cir. 2005). Each cross-motion must be evaluated on its own merits, viewing all facts and reasonable inferences in a light most favorable to the nonmoving party. *In re Citigroup, Inc.*, 535 F.3d 45, 52 (1st Cir. 2008).

Here, both Plaintiff and Defendant have filed Motions for Summary Judgment. The Court is bound to review both motions separately and view the facts in the light most favorable to the nonmoving party in each motion. Plaintiff's position is represented by his Complaint and Deposition testimony. Any attempts to change or alter the facts as the

13

litigation progressed are rejected by this Court as attempts to raise factual questions that do not exist to avoid resolution by summary judgment. Defendant takes the position that even if the facts as asserted by Plaintiff are true, the Court may rule in Defendant's favor as a matter of law. Despite this position, Defendant asserts facts that are different from Plaintiff's facts: Plaintiff argues that he told Defendant that his safety was in jeopardy and that Defendant's response was to move him to Administrative Segregation; and, Defendant argues that Plaintiff never told him that his safety was in jeopardy.

As a result of Plaintiff's exhaustion of the prison's internal administrative grievance process, some additional relevant facts are presented. (Plaintiff's Opposition to Defendant's Statement of Facts.) On May 23, 2005, a memorandum from Warden Ornoski was sent to Plaintiff referring to an April 29, 2005 letter addressing Plaintiff's complaint that he had been rehoused in administrative segregation as a precautionary measure to determine whether an enemy situation against him existed on the level III inmate general population. This letter reveals that Plaintiff's safety had been ensured by the prison in the past by placing him in administrative segregation.[3] (There is no evidence that this past incident was in any way related to the facts in this action.)

---

[3] Plaintiff is incorrect that his cellmate was not punished for the fight. The altercation that resulted in injuries to Plaintiff was classified initially a mutual combat and occurred later the same day of the counseling session but in the day room, a common area. On July 11, 2005, Plaintiff was determined to be not guilty of that charge but the cellmate Brownlee did plead guilty to a charge of mutual combat and was disciplined accordingly. At the time that Brownlee was disciplined, July 16, 2005, Brownlee stated that he did now consider inmate Billups as an enemy and a final determination was made that "an enemy situation does exist between both inmates and these inmates should not be housed together." (PSOF Ex. 4.) Plaintiff has since been relocated to a different prison facility.

Taking as true the Plaintiff's version of the facts from his complaint and deposition testimony, as a matter of law Defendant has not violated Plaintiff's constitutional rights: he told Defendant that he feared for his safety from his cellmate and Defendant "threatened" to put him in Administrative Segregation. Even if Defendant's offer to put Plaintiff in Administrative Segregation had an "attitude" that offended Plaintiff, it was an offer he should have and one would reasonably expect he would have accepted had he really believed that his safety was in jeopardy. Administrative Segregation exists for that purpose, it is not permanent, and would have gotten Plaintiff out of harm's way. If Plaintiff did not believe he was in jeopardy such that he would not take the offer to move to Administrative Segregation, it is hard to blame Defendant if he did not take Plaintiff's complaint seriously. A resolution of an action by summary judgment cannot be defeated if the claim or defense poses a factual scenario that is plainly contradicted by the summary judgment record. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Under the set of facts described by both Plaintiff and Defendant, even though they differ to some extent, neither set of facts taken as true rises to the level of a constitutional violation. So, without resolving facts, weighing evidence or assessing credibility, the Court finds as a matter of law there was no violation of Plaintiff's constitutional rights. For this matter to be set for trial, the Court must find that some version of the facts could legally result in a verdict in favor of the Plaintiff and against the Defendant by a rational factfinder after a review of the evidence and it does not so find.

**CONCLUSION**

After a thorough and complete review of the record, this Court rules as a matter of law in favor of Defendant.

Accordingly,

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment (Doc. No. 54 ) is **granted** and the Plaintiff's Motion of Summary Judgment (Doc. No. 50, 51) is **denied**.  The Clerk's Office is directed to enter a Final Judgment conforming to this Order.

//

//

**IT IS FURTHER ORDERED** that this action is terminated and closed.

DATED this 14th day of September, 2010.

David C. Bury
United States District Judge

16